OPINION
{¶ 1} Defendant-appellant, Philip A. Jordan ("appellant"), appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding appellant guilty of three counts of rape and one count of rape with use or threat of force.
 {¶ 2} Appellant was originally indicted on ten counts of rape arising from allegations of repeated sexual conduct over the course of several years with the daughter of TM, with whom appellant lived during most of the period in question.
 {¶ 3} The victim, IM, testified that her mother and appellant began dating in the summer before IM began the sixth grade. IM was age 11 or 12 at this time, and lived with her mother in the Lincoln Park West area, where they were soon joined by appellant. TM worked a night shift as a nurse, so that appellant was alone with IM most workday nights. IM testified that appellant's sexual abuse began when she was in the sixth grade, and continued four or five times a week through the eighth grade. The sexual abuse included vaginal intercourse and oral sex, both in the home and at least once elsewhere. IM often attempted to resist appellant's advances, but he was much larger and stronger and physical resistance only made things worse.
 {¶ 4} IM testified that, when she threatened to tell her mother, appellant responded that he would "come after" both mother and daughter (Tr. at 18-19, 22-23.) IM knew that appellant owned a gun and assumed that the threat involved use of this gun. Abuse continued after the family moved to a new apartment on Belvidere Avenue, and even after appellant and TM ended their relationship. Appellant would come to the new apartment when TM was at work and continue incidents of rape. IM testified that, during the period in question, she engaged in no sexual conduct with any other persons.
 {¶ 5} After the family moved to Belvidere, when IM was in the eighth grade, she told her mother about the sexual abuse. IM testified that they went to Children's Hospital the same day and initiated a course of medical and counseling treatments. IM eventually ceased going to the counseling sessions because she saw appellant parked near the counseling office one day and was intimidated.
 {¶ 6} TM's testimony corroborated the dates and locations given by her daughter regarding the family residence, IM's school locations and dates, and the duration of cohabitation between TM and appellant. TM testified that she was unaware of any visits by appellant after they ceased living together, but confirmed that appellant had once shown up near IM's counseling session. TM's testimony also confirmed IM's account of the disclosure of the sexual abuse and the visit to the hospital.
 {¶ 7} The prosecution also presented at trial, over defense objection, the testimony of Sha Clark ("Clark"), a social worker at Children's Hospital who participated in the intake process for IM. Clark testified that her role at the hospital in such cases was to interview child victims of sexual abuse and custodial parents or caregivers to compile the most complete and credible information which would then be transmitted to medical personnel, who could then tailor their physical examination and initial treatment of the child accordingly. Clark would also determine the child's needs for counseling and refer the child when necessary. Medical examination in such cases would ensue immediately after Clark's interview.
 {¶ 8} In IM's case, Clark followed typical procedure by informing IM that the initial interview was for medical forensic purposes only and it was important to gain accurate and detailed information to aid the physician.
 {¶ 9} Clark's description of IM's comments during the interview paralleled IM's subsequent testimony at trial.
 {¶ 10} After presentation of these prosecution witnesses, the defense did not present evidence. The jury returned a verdict of not guilty on six of the counts and guilty on four. At a subsequent sentencing hearing, the trial court sentenced appellant to a life sentence on the forcible rape count and eight years each on the other three rape counts to be served consecutively to each other, but concurrently with the forcible rape count.
 {¶ 11} Appellant has timely appealed and brings the following assignments of error:
I. THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS CONTAINED IN A SOCIAL WORKER'S REPORT CONTRA EVIDENCE RULE 803(4).
III. THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY AGAINST THE DEFENDANT, DENYING HIM HIS RIGHT TO CONFRONT WITNESSES AGAINST HIM CONTRA THE UNITED STATES AND OHIO CONSTITUTIONS.
 {¶ 12} Appellant's first assignment of error asserts that the judgment of conviction is supported by insufficient evidence or, alternatively, against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. As to sufficiency of the evidence, "`"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id., quoting Black's Law Dictionary (6th Ed. 1990) 1433. A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. Thompkins at 386. The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) Jackson v.Virginia (1979), 443 U.S. 307, 319. A reversal based on insufficient evidence has the same effect as a not guilty verdict, because such a determination "means that no rational factfinder could have voted to convict the defendant." Tibbs v.Florida (1982), 457 U.S. 31, 41.
 {¶ 13} As opposed to the concept of sufficiency of the evidence, the court in Thompkins noted that "[w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) Id. at 387, quoting Black's at 1594.
 {¶ 14} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 387. An appellate court should reverse a conviction as against the manifest weight of the evidence in only the most "exceptional case in which the evidence weighs heavily against the conviction[,]" instances in which the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175,
 {¶ 15} Appellant's sole argument raised in support of this assignment of error is that the jury, when it declined to find appellant guilty on six of the charges against him, demonstrated that it found the victim's testimony less than credible, and that conviction on the remaining four counts was thus not supported by credible evidence.
 {¶ 16} "It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness." State v. Lakes
(1964), 120 Ohio App. 213, 217. See, also, State v. Craig
(2000), Franklin App. No. 99AP-739. Because the trier of fact is free to believe all, part or none of a witness' testimony, the jury in this case was at liberty to find the victim's testimony unpersuasive, for whatever reasons, as to certain incidents, times, dates, and places, but not as to others. State v. Antill
(1964), 176 Ohio St. 61. IM's testimony was clear, unequivocal, and detailed as to the course of sexual abuse that she suffered at the hands of appellant, and a trier of fact was not unreasonable in accepting part of this evidence as proof beyond a reasonable doubt of certain counts against appellant, even if refusing to convict on the other counts. Based solely upon the evidence presented by IM, we find both that there was sufficient competent, credible evidence to support conviction on the charges for which appellant was found guilty, and that the jury did not lose its way in assessing the evidence before it and in reaching a guilty verdict on some of the counts against appellant. We accordingly find that appellant's first assignment of error is without merit and is overruled.
 {¶ 17} Appellant's second assignment of error asserts that the trial court erred in admitting the testimony of Clark, the social worker, who was allowed to recount IM's description of the abuse as part of the intake process at the hospital. Appellant asserts that these are hearsay statements that the trial court erroneously admitted under Evid.R. 803(4). That rule provides an exception to the hearsay rule whereby out-of-court statements otherwise excludable as hearsay may be admitted when they are "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 18} Appellant asserts on appeal that IM's statements to Clark were not made for purposes of medical diagnosis or treatment because IM did not go the hospital to seek treatment for physical injury, sexually transmitted disease, or any other medical consequence of the abuse. Appellant asserts that IM was taken to Children's Hospital solely as part of an investigation into the abuse allegations she had made against appellant.
 {¶ 19} Generally, a trial court has broad discretion in the admission of evidence, and evidentiary rulings will only be reversed on appeal on a showing that the trial court abused its discretion. The term "abuse of discretion" connotes more than a mere error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 20} The exception set forth in Evid.R. 803(4) extends to statements made to social workers as long as the purpose of the statement is part of initiation of medical diagnosis or treatment. State v. Nasser, Franklin App. No. 02AP-1112,2003-Ohio-5947, at ¶ 52. Statements made by a child identifying the perpetrator of sexual abuse may be pertinent to both diagnosis and treatment, because such statements will assist medical personnel in treating any actual injury and in assessing the emotional and psychological impact of the abuse to formulate a counseling plan or other treatment therefor. State v. Dever
(1992), 64 Ohio St.3d 401, 413. The trial court did not abuse its discretion in finding that IM's statements to Clark were admissible under Evid.R. 803(4). Although the record suggests that a prosecutor and police personnel did monitor the interview by a closed-circuit television, this did not change the essential purpose of the interview. The investigation did benefit from the information gleaned from the interview with regard to the identity of the perpetrator and the nature of the abuse, but this was secondary to the primary purpose of initiating medical treatment, which was clearly described by Clark in her testimony.
 {¶ 21} Under these circumstances, we find no abuse of discretion by the trial court in admitting Clark's testimony. Appellant's second assignment of error is overruled.
 {¶ 22} Appellant's third assignment of error asserts that the admission of out-of-court statements by IM through Clark's testimony violated appellant's constitutional right under theSixth Amendment to the United States Constitution to confront the witnesses presented against him at trial. Because appellant made no objection at trial to this testimony on Sixth Amendment grounds, we examine this alleged error under a plain error standard.
 {¶ 23} Under Crawford v. Washington (2004), 541 U.S. 36, regardless of its admissibility under the rules of evidence, a testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the accused has a prior opportunity to cross-examine the witness. This holding overruled a prior Confrontation Clause analysis set forth inOhio v. Roberts (1980), 448 U.S. 56, in which out-of-court statements could be admitted with "adequate indicia of reliability."
 {¶ 24} Crawford further states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 59, fn. 9, citing California v. Green
(1970), 399 U.S. 149, 162.
 {¶ 25} Although appellant ultimately chose not to fully cross-examine IM at trial on the subject of these prior, out-of-court statements to Clark, she did testify, and appellant had the opportunity for effective cross-examination. Because the Confrontation Clause guarantees only an opportunity for cross-examination, the fact that a defendant has chosen not to avail himself of the opportunity does not violate the Confrontation Clause. United States v. Owens (1988),484 U.S. 554, 559.
 {¶ 26} Moreover, even if appellant had not had the opportunity to confront and cross-examine the declarant of the out-of-court statement, this court has held that statements by a rape victim during a medical intake proceeding are not testimonial: "Statements made by child abuse victims to medical providers are normally not testimonial. * * * [The victim] made her statements while she was interviewed by a social worker at Columbus Children's Hospital. The social worker did not work for the state or a governmental agency. * * * [T]he purpose of the interview was to gather information for the hospital's medical staff to treat [the victim], not to investigate acts of alleged sexual abuse." State v. Martin, Franklin App. No. 05AP-818,2006-Ohio-2749, at ¶ 21.
 {¶ 27} Accordingly, we conclude that, even under a plain error standard, appellant's Sixth Amendment right to confront witnesses against him at trial was not violated under theCrawford standard because the admitted out-of-court statements were not testimonial and appellant had a full opportunity to cross-examine the declarant, who testified at trial. Appellant's third assignment of error is accordingly overruled.
 {¶ 28} In summary, appellant's first, second, and third assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Brown, JJ., concur.