OPINION
{¶ 1} Defendant-appellant, Donovan R. Ball ("appellant"), appeals from a judgment of conviction and sentence by the Franklin County Court of Common Pleas entered after a bench trial in which appellant was found guilty of one count of rape in violation of R.C. 2907.02, a felony of the first degree.
 {¶ 2} The conviction herein arises from allegations that appellant sexually assaulted C.B.,[1] the daughter of his girlfriend Jammie Pierce, between the time period of *Page 2 
March 1 to June 1, 2000. On October 4, 2006, a Franklin County Grand Jury returned a six-count indictment against appellant alleging that he committed three counts of rape and three counts of gross sexual imposition. This matter was originally tried to a jury in January 2007. In that case, appellant was acquitted of count two of the indictment. However, the jury could not reach a verdict as to the remaining counts, resulting in the trial court declaring a mistrial. Thereafter, appellant waived his right to a jury trial, executed a written jury waiver, and proceeded to a trial to the bench on counts one, three, four, five and six of the indictment.
 {¶ 3} The trial court heard testimony from C.B., Ms. Pierce, Kerri Marshall, a social worker in the Child Assessment Center at Children's Hospital, Gail Hornor, a pediatric nurse practitioner in the Child Assessment Center at Children's Hospital, and appellant. The trial court acquitted appellant of counts three, four, five and six of the indictment, and convicted appellant of count one of the indictment, to-wit: rape, a first degree felony in violation of R.C. 2907.02.
 {¶ 4} A sentencing hearing was held and the trial court imposed a life sentence with parole eligibility. In addition, appellant was found to be a sexual predator pursuant to R.C. 2950.09.
 {¶ 5} The following facts were adduced at trial. C.B. was born in June 1992. C.B.'s mother, Ms. Pierce, met appellant in 2000. Sometime during March or April 2000, appellant babysat C.B. overnight at his apartment on Fifth Avenue in Columbus, Ohio. According to Ms. Pierce, appellant called her the following day and was very upset. Ms. Pierce testified appellant wanted to "kill himself because he thought sexual things when C.B. stayed the night and he was upset about it." (Tr. at 13.) Ms. Pierce testified she *Page 3 
"didn't think anything of it" and told appellant to calm down. C.B. was approximately seven and one-half years old at the time and was not questioned about the incident. As the relationship between appellant and Ms. Pierce progressed, the couple moved in together in September 2000. C.B. and her younger brother also moved in with the couple. Ms. Pierce and appellant lived together until February 2002 when appellant moved out of the residence.
 {¶ 6} In April 2005, C.B. had a boyfriend, and through conversations with the boyfriend and the boyfriend's mother, Ms. Pierce learned appellant allegedly repeatedly sexually assaulted C.B. Ms. Pierce called the police and took C.B. to Children's Hospital for an examination.
 {¶ 7} C.B. testified at trial that appellant sexually abused her on multiple occasions beginning the night she stayed at his apartment when he babysat and continuing to various times throughout the time appellant lived with Ms. Pierce. C.B. stated she did not tell anyone because she afraid. The incident occurring the night appellant babysat C.B. at his apartment gave rise to count one of the indictment. C.B. described that on this occasion appellant touched the inside of her vagina with his penis. C.B. further described that appellant told her not to tell her mother because they had a "good relationship and it would ruin it." (Tr. at 42.)
 {¶ 8} Ms. Marshall testified, over objection, to statements made to her by C.B. during the April 2005 interview, including the March 2000 babysitting incident. Ms. Marshall acknowledged the interview between her and C.B. was videotaped and a county prosecutor and law enforcement were watching the interview. Ms. Hornor testified to the examination she conducted on C.B. on April 14, 2005. Ms. Hornor described that C.B. *Page 4 
did not show signs of physical trauma and she was unable to find any type of injury to substantiate the allegations at issue. According to Ms. Hornor, the absence of physical trauma is not unusual in sexual abuse cases.
 {¶ 9} Appellant testified on his own behalf. Appellant acknowledged he and Ms. Pierce dated for over two years, and indicated he cared greatly for C.B. Appellant denied ever touching C.B. in an inappropriate manner and specifically denied any allegation of sexual assault.
 {¶ 10} On appeal, appellant brings two assignments of error for our review:
Assignment of Error No. 1
 The trial court erred by allowing hearsay testimony against appellant, thereby denying him his right to confront witnesses against him contra the U.S. and Ohio Constitutions.
 Assignment of Error No. 2
 The trial court erred in admitting hearsay statements contained in a social worker's report contra evidence rule 803(4).
 {¶ 11} Both of these assignments of error concern the introduction of statements made by C.B. to Ms. Marshall during the interview on April 14, 2005. As stated previously, Ms. Marshall is a social worker in the Child Assessment Center at Children's Hospital where children are seen when there are allegations of physical and/or sexual abuse. Thereafter, the children are seen by a doctor or a nurse practitioner for an examination.
 {¶ 12} On April 14, 2005, Ms. Marshall interviewed C.B. at the hospital. Several other people, including a mental health advocate, a caseworker from Franklin County Children's Services, a detective from the Franklin County Sheriff's Office, a prosecutor *Page 5 
from the Franklin County Prosecutor's Office, and Ms. Hornor watched the interview in real time on a closed-circuit television. Ms. Marshall testified that this process occurs so that children do not have to be interviewed more than once, thereby minimizing the trauma that might ensue from multiple interviews. Ms. Marshall testified that the purpose of the interview on April 14, 2005 was to gather medical information for purposes of medical diagnosis and treatment.
 {¶ 13} During the interview, C.B. made statements regarding the alleged abuse. Over appellant's objection, Ms. Marshall was permitted to testify as to those statements where C.B. described the night she stayed at appellant's apartment, and that appellant touched both the inside and outside of her vagina with his fingers. According to Ms. Marshall, C.B. also described appellant pushing his penis on her vagina and although he tried to put it inside, "it never went all the way in." (Tr. at 68.)
 {¶ 14} In his first assignment of error, appellant contends the admission of out-of-court statements by C.B. through Ms. Marshall's testimony violated his constitutional right to confront witnesses presented against him at trial.
 {¶ 15} Under Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, the Supreme Court of the United States held that out-of-court statements that are testimonial are barred under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. Id. at 68. As stated by this court in State v. Martin, Franklin App. No. 05AP-818,2006-Ohio-2749, "[statements made by child abuse victims to medical providers are normally not testimonial." Id. at ¶ 21, citing State v.Sheppard, 164 Ohio App.3d 372, 2005-Ohio-6065, at ¶ 30; State v.Edinger, *Page 6 
Franklin App. No. 05AP-31, 2006-Ohio-1527, at ¶ 82; In re D.L., Cuyahoga App. No. 84643, 2005-Ohio-2320, at ¶ 20.
 {¶ 16} In the case sub judice, we conclude that C.B.'s statements were not testimonial. C.B. made her statements while she was interviewed by a social worker at Columbus Children's Hospital. The social worker did not work for the state or a governmental agency. See Edinger, at ¶ 63. Additionally, the purpose of the interview was to gather information for the hospital's medical staff to treat C.B., not to investigate acts of alleged sexual abuse. Crawford (testimonial statements include those made under police questioning). Although other people, including a detective from the Franklin County Sheriff's Office, watched the interview, there is nothing in the record that would demonstrate that C.B. was aware these persons were watching the interview.Martin.
 {¶ 17} Because C.B.'s statements were not testimonial, their introduction did not violate appellant's constitutional right to confront witnesses. We note that even if C.B.'s statements were testimonial, C.B. testified at trial. When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of that witness's prior testimonial statements. Martin, at ¶ 22, citing Crawford, at 59, fn. 9;Sheppard, at ¶ 31. See, also, Jordan, supra (the child victim did testify at trial; therefore, the defendant had the opportunity to cross-examine the child as to prior, out-of-court statements made to the interviewing social worker).
 {¶ 18} We conclude appellant's constitutional right to confront witnesses against him at trial was not violated under theCrawford standard because the statements at issue were not testimonial and appellant had a full opportunity to cross-examine the declarant, who testified at trial. Accordingly, we overrule appellant's first assignment of error. *Page 7 
 {¶ 19} In his second assignment of error, appellant contends Ms. Marshall's testimony was improperly admitted under Evid. R. 803(4), which allows the introduction of hearsay statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." According to appellant, C.B.'s statements were not made for purposes of medical diagnosis or treatment but, rather, were part of a forensic examination.
 {¶ 20} A trial court has broad discretion to determine whether a declaration should be admissible under a hearsay exception. State v.Dever (1992), 64 Ohio St.3d 401, 410. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. State v. Finnerty (1989), 45 Ohio St.3d 104, 107.
 {¶ 21} "The exception set forth in Evid. R. 803(4) extends to statements made to social workers so long as the purpose of the statement is part of initiation of medical diagnosis or treatment."State v. Jordan, Franklin App. No. 06AP-96, 2006-Ohio-6224 at ¶ 20, citing State v. Nasser, Franklin App. No. 02AP-1112, 2003-Ohio-5947. We find the statements at issue made to Ms. Marshall by C.B. were made for the purpose of medical diagnosis or treatment. Further, in analogous situations, this court has held that "the fact that other people, including a detective [from a law enforcement agency], watched the interview in real time did not change the purpose of the interview."Martin, at ¶ 17. See, also, Jordan, at ¶ 20 ("Although the record suggests that a prosecutor and police personnel did monitor the interview by a closed-circuit television, this did not change the essential purpose of the interview" and render the child victim's statements to a social *Page 8 
worker inadmissible under Evid. R. 803(4); Edinger, supra (statements child made to a social worker interviewing child for medical treatment and diagnosis properly admitted, even with police detective observing through closed-circuit television). Additionally, as stated previously, there is no evidence C.B. was aware that the other people were watching the interview.
 {¶ 22} Because C.B.'s statements to Ms. Marshall were made for the purpose of medical diagnosis or treatment, the trial court did not abuse its discretion by admitting those statements. Accordingly, we overrule appellant's second assignment of error.
 {¶ 23} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT, J. concurs separately. BROWN, J., concurs with the concurring opinion.
[1] For purposes of anonymity, we will use the victim's initials throughout this opinion.