[Cite as *State v. J.A.*, 2021-Ohio-2265.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109918 |
| v. | : | |
| J.A., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 1, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623180-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tasha L. Forchione, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard, *for appellant.*

LARRY A. JONES, SR., J.:

{¶ 1} Defendant-appellant J.A. appeals from the trial court's July 30, 2020 judgment denying his petition for postconviction relief. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} In 2017, J.A. was charged in a three-count indictment with rape, kidnapping, and burglary. The victim and the defendant are first cousins, and at various times throughout their childhood, resided together.

{¶ 3} After the initial indictment, the victim alleged additional incidents of sexual assault, and J.A. was charged in a new indictment. The new indictment consisted of five counts of rape in violation of R.C. 2907.02(A)(1)(b); four counts of kidnapping in violation of R.C. 2905.01(A)(4); one count of attempted rape in violation of R.C. 2907.02(A)(2); one count of rape in violation of R.C. 2907.02(A)(2); and one count of aggravated burglary in violation of R.C. 2911.11(A)(1). The rape counts contained sexually violent predator specifications and the kidnapping counts contained sexual motivation specifications.

{¶ 4} The original indictment was dismissed with prejudice. The new indictment included allegations of prior sexual assault, dating back to when the victim, who at the time of the trial was 18 years old, was five or six years old, as well as conduct alleged to have occurred on August 26, 2016, and reported the next day.

{¶ 5} J.A. waived his right to a jury trial, and the matter proceeded to a bench trial. The record demonstrates that a defense investigator interviewed the victim two days prior to trial; the interview was recorded. During the interview, the victim told the investigator the name of a potential witness, that is, a naked woman who was present in the home at the time of the August 26, 2016 assault.

Prior to this interview, the victim had not disclosed the name of this witness. Further, a letter written by J.A. to the victim's mother (J.A.'s aunt) was provided to the investigator. In the letter, J.A. stated that he "took full responsibility" for his actions, but maintained that the victim was a willing participant.

{¶ 6} J.A.'s trial counsel planned to use the recorded interview, but its disclosure to the state was at issue. Specifically, the record demonstrates that the state received the recording the evening prior to the start of trial, but was unable to access it because it was sent to a Google drive and the assistant prosecuting attorney handling the case did not have a Google account and, thus, was unable to review it. The trial court ruled that the defense would not be allowed to use the recording.

{¶ 7} During trial, the state dismissed one of the rape counts. J.A. made a Crim.R. 29 motion for judgment of acquittal; the motion was denied. After its deliberation, the trial court found J.A. guilty of one count of rape with a sexually violent predator specification and one count of kidnapping with a sexual motivation specification; the counts pertained to the August 26, 2016 incident.

{¶ 8} The facts relative to the August 26, 2016 charge are as follows. The victim testified that J.A. came into her bedroom that evening when the two were home alone and vaginally raped her. A friend of J.A.'s confirmed that J.A. was home alone with the victim. The victim reported it to her teacher and the school principal the following day. The victim went to the hospital where a rape kit was

administered. The results of the rape kit demonstrated that J.A.'s DNA matched the seminal fraction sample taken from the victim's underwear.

{¶ 9} The trial court sentenced J.A. to a prison term of 10 years to life and classified him as a Tier III sex offender. J.A. filed a direct appeal, in which he alleged that it was error to (1) include and sentence him on a sexually violent predator specification; and (2) sentence him to life imprisonment. *State v. J.A.*, 2019-Ohio-986, 132 N.E.3d 1294 (8th Dist.) ("*J.A. I*"). This court affirmed the trial court's judgment. *Id.* at ¶ 1, 31.

{¶ 10} In June 2019, J.A. filed an application to reopen this court's judgment in *J.A. I*. *State v. J.A.*, 8th Dist. Cuyahoga No. 107182, 2020-Ohio-484 ("*J.A. II*"). He raised the following assignments of error:

1. The convictions were against the manifest weight of the evidence.

2. Appellant was denied his Sixth Amendment right to the effective assistance of counsel because trial counsel failed to engage in reciprocal discovery, thereby violating the Appellant's Sixth Amendment right to cross-examination.

3. The trial court abused its discretion by failing to permit trial counsel to use the audio recording of the interview with the victim, thereby violating the Appellant's Sixth Amendment right to cross-examination.

4. Appellant was denied his Sixth Amendment right to the effective assistance of counsel because trial counsel repeatedly failed to object to hearsay testimony.

{¶ 11} This court denied the application to reopen in February 2020. *Id.* at ¶ 1, 16.

{¶ 12} Meanwhile, on June 25, 2019, while the application to reopen was pending, J.A. filed a first petition for postconviction relief in the trial court. He raised the following grounds for relief:

> 1. Petitioner was denied the effective assistance of counsel due to his counsel's failure to properly and thoroughly investigate the case.
>
> 2. Trial counsel's inexcusably delayed acquisition of the recorded interview of the alleged victim, and the letter, resulted in the trial court choosing to exclude the recording from evidence in violation of Petitioner's rights to Compulsory Process and Confrontation of Adverse Witnesses and provided by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution as well as his Due Process rights to a fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

{¶ 13} J.A. contended in his petition that he would "be manually filing a copy of the recording of the interview done by the investigator as Petitioner's Exhibit 1"; he failed to file the recording, however. The state requested a copy of the recording via email on July 12, 2019 and December 16, 2020; the assistant prosecuting attorney representing the state contends that a response was never provided. J.A.'s petition did include a copy of a letter he wrote to the victim's mother, his aunt.

{¶ 14} On July 21, 2019, without seeking or being granted leave of court, J.A. filed an amended petition for postconviction relief that included the same grounds for relief as his original petition, and included a purported "transcription of recording of interview" of the victim. J.A. filed a second amended petition in response to an order by the trial court to remove the victim's name.

{¶ 15} On July 30, 2020, the trial court denied the petition without a hearing. The court found the claims were barred by the doctrine of res judicata and that the amended petitions were filed without leave of court. The court nonetheless considered the merits of the petition and found them not well taken. J.A. now appeals, raising the following sole assignment of error for our review: "The trial court abused its discretion in denying appellant's petition for postconviction relief."[1]

## Law and Analysis

{¶ 16} The postconviction relief process is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994). "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. *State v. Carter*, 10th Dist. Franklin No. 13AP-4, 2013-Ohio-4058, ¶ 15.

{¶ 17} A defendant is not automatically entitled to an evidentiary hearing on a postconviction-relief petition. *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). R.C. 2953.21(C) provides that, "[b]efore granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief." The petitioner bears the initial burden of offering evidence that demonstrates a cognizable claim of constitutional error. *State v. Ibrahim*, 10th

---

[1]Within his assignment of error, J.A. contends that the trial court erred in finding his petition was filed without leave of court. But because the court nonetheless addressed the merits of the petition, we will review the merits as well and, thus, the issue of whether the petition was properly filed is moot.

Dist. Franklin No. 14AP-355, 2014-Ohio-5307, ¶ 9. Because the burden is the petitioner's, a postconviction-relief petition may be denied without an evidentiary hearing when the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner has offered sufficient operative facts to establish substantive grounds for relief. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus. Appellate review of a trial court's denial of a postconviction relief petition without a hearing is for abuse of discretion. *State v. McBride*, 10th Dist. Franklin No. 14AP-237, 2014-Ohio-5102, ¶ 11.

{¶ 18} J.A. contends that his trial counsel was ineffective because he failed to properly and thoroughly investigate the case. Specifically, J.A. alleges that his trial counsel did not have an investigator interview the victim until approximately two days before trial. J.A. also contends that, as a result of his trial counsel's failure to properly and thoroughly investigate the case, the trial court's exclusion of evidence deprived him of his constitutional rights to compulsory process and to confront the witnesses against him.

{¶ 19} Ineffective assistance of counsel claims are reviewed using the two-pronged approach set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* "'[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same

order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.'" *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), quoting *Strickland* at 697. If one part cannot be proved, regardless of which or in which order, the analysis ends, and the claim for ineffective assistance of counsel fails. *Bradley* at *id.*

{¶ 20} "In evaluating counsel's performance,

> 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action "might be considered sound trial strategy."'"

*State v. Roush*, 10th Dist. Franklin No. 12AP-201, 2013-Ohio-3162, ¶ 37, quoting *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus.

{¶ 21} As mentioned, J.A. contended in his petitions that trial counsel learned the name of a potential witness two days before trial and that there was not enough time to locate and interview the witness. He also attached a letter written by himself to the victim's mother (his aunt), in which he claimed that the sexual encounters with the victim were consensual. According to J.A., the letter "would have facilitated trial counsel in asserting a consent and threesome defense that likely would have been corroborated by the testimony of" the new witness.

{¶ 22} J.A. failed to include an affidavit from trial counsel, the investigator, or the new witness, however. On this record, we agree with the trial court that J.A.'s claim that the witness would have corroborated his consent defense is "without any basis in the record, evidence, or affidavit." In other words, J.A.'s contention was mere speculation, which is insufficient to establish prejudice. Indeed, in prior litigation in this case, this court stated that "[s]peculation does not establish prejudice." *J.A. II*, 8th Dist. Cuyahoga No. 107182, 2020-Ohio-484, at ¶ 13.

{¶ 23} As mentioned, we afford "defense counsel the benefit of the doubt in matters of trial strategy and a failure to investigate does not automatically mean that counsel was ineffective." *State v. Dye*, 8th Dist. Cuyahoga No. 109366, 2021-Ohio-207, citing *Strickland*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Here, trial counsel did investigate. Specifically, he interviewed the victim, albeit right before the trial date. Nonetheless, counsel extensively cross-examined the victim regarding her interaction with the witness who was in the home during the incident. On this record, J.A. has not demonstrated that his counsel's representation fell below an objective standard of reasonableness.

{¶ 24} Although J.A.'s failure to demonstrate the first *Strickland* prong is dispositive, we nonetheless consider the second prong — whether J.A.

demonstrated that the result of the proceeding would have been different. He did not.

{¶ 25} The potential witness was allegedly in the basement when the sexual assault occurred upstairs in the victim's bedroom. Thus, the witness was not an eyewitness to the sexual assault, and her testimony would not have changed the outcome of the trial.

{¶ 26} Moreover, the evidence presented by the state overwhelmingly supported the convictions. Specifically, on the date in question, as confirmed by the testimony of J.A.'s friend, J.A. was home alone with the victim. The victim testified that J.A. entered her bedroom and got on top of her without her permission. J.A. pulled her pants down and raped her. The victim testified that she did not want that to happen, that she could not leave the room safely, and that she was in fear throughout the sexual assault.

{¶ 27} The following day at school, the victim reported the incident to her teacher and the school principal. She went to the hospital for treatment, and a rape kit was administered. The result of the rape kit showed that J.A.'s DNA matched the seminal fraction sample taken from the victim's underwear. Thus, J.A. failed to establish, given the evidence of his guilt, that the result would have been different with the new witness's testimony.

{¶ 28} J.A.'s claim of ineffective assistance of counsel based on the exclusion of the victim's recorded interview and the letter he authored also fails. As mentioned, the evidence was excluded because it was provided last-minute to

the state. According to J.A., the recording could have been used to cross-examine the victim regarding the identity of the new witness, the DNA results, and whether the sexual encounter was consensual.

{¶ 29} J.A. failed to provide a copy of the recording to either the state or the trial court. Rather, he attached to his petition what he described as a transcription made by his investigator. The trial court questioned the authenticity of the transcription but reviewed its substance anyway, and found no "material inconsistencies between the audio transcript and the victim's trial testimony." Consequently, the trial court found that J.A. was "not prejudiced by the exclusion of the interview." We agree.

{¶ 30} The "transcript" demonstrates that the interview corroborated the victim's report to the police and her trial testimony. Specifically, relative to the convicted charges, the victim told the investigator "he came on me[,] crawled in and forced himself inside of me." In regard to the potential witness, the victim told the investigator that the witness was in the basement, and the sexual assault "happened upstairs * * * in [her] bedroom." Further, the victim told the investigator that she was not concerned with the woman because she "was just in shock the entire night" and "wasn't worried about anything but myself."

{¶ 31} In regard to the letter J.A. wrote to the victim's mother, the mother told the investigator that J.A. "wrote a letter, he confessed." The victim described J.A. as "beggin me" to "make it seem like we consented" in the letter. She never told the investigator she consented to the sexual activity, however.

**{¶ 32}** In light of the above, the letter and the interview could not have been used to impeach the victim. Moreover, this court has already held that despite any alleged inconsistencies and impeachment, the victim's "testimony combined with the forensic evidence provides substantial evidence from which the trier of fact could reasonably conclude that all the elements had been proven beyond a reasonable doubt." *J.A. II*, 8th Dist. Cuyahoga No. 107182, 2020-Ohio-484, at ¶ 11.

**{¶ 33}** Thus, the trial court did not abuse its discretion in denying J.A.'s petition without a hearing and the sole assignment of error is overruled.

**{¶ 34}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MARY EILEEN KILBANE, J., CONCUR